## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENZO LIFE SCIENCES, INC., | ) |
| | ) |
| | ) 04-CV-01555 (RJS) |
| Plaintiff, | ) |
| | ) ECF Case |
| vs. | ) |
| | ) |
| AFFYMETRIX, INC., | ) |
| | ) |
| Defendant, | ) |
| | ) |
| | ) |
| AND RELATED CASES NAMING | ) 02-CV-08448 (RJS) |
| MOLECULAR PROBES, INC., | ) 03-CV-03817 (RJS) |
| PERKINELMER, INC., PERKINELMER | ) 03-CV-03819 (RJS) |
| LIFE SCIENCES, INC., ORCHID | ) 03-CV-03816 (RJS) |
| BIOSCIENCES, INC., ENZO BIOCHEM, | ) 03-CV-08907 (RJS) |
| INC., ENZO LIFE SCIENCES, INC., | ) 04-CV-04046 (RJS) |
| AFFYMETRIX, INC., ROCHE | ) |
| DIAGNOSTICS GMBH, AND | ) |
| ROCHE MOLECULAR SYSTEMS, INC. | ) |
| AS DEFENDANTS, PLAINTIFFS, | ) |
| AND/OR DECLARATORY JUDGMENT | ) |
| PLAINTIFFS. | ) |
| | ) |

## AFFYMETRIX, INC.'S REPLY REGARDING THE UNDISPUTED FACTS
## SUPPORTING ITS MOTION FOR SUMMARY JUDGMENT

In accordance with Local Rule 56.1(b) of the United States District Court for the

Southern District of New York, Affymetrix, Inc. ("Affymetrix") hereby replies to the responses

by Enzo Biochem, Inc. and Enzo Life Sciences, Inc.'s ( collectively "Enzo") to Affymetrix's

statement of undisputed facts supporting its motion for summary judgment.

The undisputed facts are reproduced below in block quotes, followed by Enzo's

responses to the undisputed facts, and then Affymetrix's reply.  Following that, Affymetrix

demonstrates that Enzo's "additional facts" raise no genuine issue of material fact.

**AFFYMETRIX NO. 1.**

> In April 1998, Enzo Diagnostics, Inc. and Affymetrix, Inc. entered into a "Distributorship Agreement" (the "Agreement" or "Agmt.".) Declaration of Vernon A. Norviel, dated December 19, 2006 ("Norviel Decl.") ¶ 4.

**ENZO RESPONSE TO AFFYMETRIX NO. 1**:

Undisputed. However:

1.      The copy of the Agreement attached as Exhibit 1 to the Declaration of Vernon A. Norviel dated December 19, 2006 submitted in support of Affymetrix's Motion is incomplete. (See Ex. 7, Enzo Diagnostics, Inc.-Affymetrix Inc., Distributorship Agreement (the "Agreement") for a complete copy.)

**AFFYMETRIX REPLY RE AFFYMETRIX NO. 1**:

Enzo does not dispute the fact stated in AFFYMETRIX NO. 1.  Enzo comments that the copy of the Agreement attached as Exhibit 1 to the Norviel Declaration is "incomplete."  Enzo does not identify what is "incomplete" about the Agreement attached to the Norviel Declaration, and is perhaps referring to the redaction of the percentages in Sections 5 and 6.  Enzo does not argue that the stated percentages are material to Affymetrix's motion for summary judgment or Enzo's opposition.  Affymetrix notes that the copy of the Agreement that Enzo submits with its opposition lacks the full complement of Addendums that successively changed the notice period for termination from the original six (6) months to four (4) months to three (3) months and, ultimately, to two (2) weeks.  The Agreement attached to the Norviel Declaration contains the complete complement of these Addendums.

**AFFYMETRIX NO. 2.**

> The Agreement "appointed" Affymetrix a "nonexclusive worldwide distributor" of certain Enzo "reagents" used "in nucleic acid labeling and detection."  Agmt. §1, p. 2.  The Agreement termed these particular reagents "PRODUCTS," and specifically

listed them all in its Exhibit B.  *Id.* and Exhibit B thereto; Norviel
Decl. ¶¶ 4, 10.


**ENZO RESPONSE TO AFFYMETRIX NO. 2**:

Disputed.

1.      The Agreement states in relevant part that "[d]uring the term of this Agreement,
Enzo hereby appoints Affymetrix to act as its nonexclusive worldwide distributor for the
distribution and sale of only the Products listed in Exhibit B, and Affymetrix accepts such
appointment and agrees to act as such distributor under the terms and conditions set forth
herein."  (Ex. 7 at § 1, p.2.)

2.      Exhibit B to the Agreement lists and identifies three such Products, along with
their components.  (Id. at Ex. B.)

**AFFYMETRIX REPLY RE AFFYMETRIX NO. 2**:

Enzo does not dispute the facts stated in Affymetrix No. 2, but merely quotes the Section
1 of the Agreement that Affymetrix paraphrased and cited.  Affymetrix does not dispute the
accuracy of Enzo's quotation, and thus this fact remains undisputed.

**AFFYMETRIX NO. 3.**

The Agreement defines "PRODUCT" as follows:  "PRODUCT
means an individual reagent, component or combination thereof
including kits for use in nucleic acid labeling and detection, the
manufacture, use or sale of which is covered by one or more
claims of ENZO PATENTS (EXHIBIT A), the PRODUCTS being
listed in EXHIBIT B."  Agmt., p. 2.

**ENZO RESPONSE TO AFFYMETRIX NO. 3**:

Undisputed. However:

1.      The Agreement has a second definition of Products: "Enzo manufactures and/or
sells certain products listed in Exhibit B ("Products"). . .."

**AFFYMETRIX REPLY RE AFFYMETRIX NO. 3**:

Enzo does not dispute AFFYMETRIX NO. 3, which is a direct quote from the

Agreement which appears under the heading "DEFINITIONS."  Instead, Enzo argues that a

second definition of PRODUCTS is contained within the Agreement.  Enzo selectively quotes

the Recital portion of the Agreement, which states in full:

> WHEREAS, ENZO manufactures and/or sells certain products
> listed in EXHIBIT B ("PRODUCTS") and/or certain components
> of the PRODUCTS ("LABELING AND DETECTION
> COMPONENTS") defined below, the manufacture, sale or use of
> which is covered by claims of one or more PATENTS (EXHIBIT
> A);

The Recital refers to the definition section of the Agreement for the proper definition of

PRODUCTS.  This fact remains undisputed.

**AFFYMETRIX NO. 4.**

> Enzo and Affymetrix could have agreed to add further products to
> Exhibit B of the Agreement, thus making such products
> "PRODUCTS" under the Agreement.  Agmt. Ex. B, p. 1; Norviel
> Decl. ¶¶ 4, 10.  But Enzo and Affymetrix never agreed to add
> further products to the Agreement's Exhibit B.  Declaration of Lisa
> A. Cowell, dated December 20, 2006 ("Cowell Decl.") ¶ 2.

**ENZO RESPONSE TO AFFYMETRIX NO. 4**:

Undisputed. However:

1.     Affymetrix fails to provide any evidentiary support for its alleged undisputed fact

that "Enzo and Affymetrix never agreed to add further products to the Agreement's Exhibit B,"

and it therefore must be rejected.  See Local R. 56.1(d.)

**AFFYMETRIX REPLY RE AFFYMETRIX NO. 4**:

Enzo does not dispute the facts set forth in AFFYMETRIX NO. 4.  Instead, Enzo makes

an unfounded objection that one of the stated facts is not supported by evidence.  Enzo's

objection is baseless.  The stated fact is supported by the Cowell Declaration, ¶ 2, as stated in

AFFYMETRIX NO. 4.  Enzo offers no countervailing evidence, and therefore concedes that the

facts as undisputed.

**AFFYMETRIX NO. 5.**

> In addition to distribution rights, the Agreement gave Affymetrix
> certain rights to use Enzo's reagent PRODUCTS in, *inter alia*, its
> product development work.  Agmt. § 5.  In turn, Enzo was granted
> back certain rights to improvements and inventions that Affymetrix
> might make regarding these particular reagents while using them.
> *Id.*

**ENZO RESPONSE TO AFFYMETRIX NO. 5**:

Disputed.

1.      In addition to granting Affymetrix limited distribution rights to Enzo's Products,

the Agreement also granted Affymetrix limited rights to use Enzo Products for three

circumscribed purposes.  (Ex. 7 at § 5.)

2.      Enzo authorized Affymetrix to use Enzo's Products "only for the following

purposes. . . limited to: (a) performing quality control procedures for the Products; (b) optimizing

the function of GeneChip® products and GeneChip® Assays; and (c) developing new gene chip

products."  (Id.)

3.      Both Enzo and Affymetrix, however, understood that the main objective of the

Agreement was to provide the terms of a relationship in which Affymetrix would purchase

labeling reagents from Enzo and "resell them as a distributor," (Ex. 5 at 44:18-20; see Ex. at

29:13-16; Ex. 8 at 34:13-15; Ex. 17 at 49:22-50:6), and that Affymetrix's limited rights to use

Enzo's Products were incidental to its rights to distribute Enzo's Products.  (See Ex. 8 at 31:7-

32:14; Ex. 5 at 116:17-20.)

4.      To the extent that Affymetrix's use of the Products produced improvements directed to the Products or their use, it was required to transfer rights in those inventions back to Enzo.  As set forth in Section 5 of the Agreement, Enzo and Affymetrix agreed that if Affymetrix conceived "any invention or product . . . during the course of Affymetrix' use of the Products and/or Enzo's [Confidential Infomration] (*sic*)," and such invention or product was "directed to the Products, or their use, or improvements thereto," Affymetrix would "have the rights to such inventions and products for novel gene chip products," and Enzo would "retain all other rights to such inventions and products including but not limited to those for labeling and detection processes and components therefore."  (Ex. 7 at § 5.)

5.      This provision reflects the parties' intent to allocate the rights to any new products or inventions conceived by Affymetrix during the course of its use of Enzo's Products in accordance with the parties' respective lines of business, i.e., Affymetrix was to retain rights to "novel gene chip products" and Enzo was to retain rights to all other products, "including but not limited to those for labeling and detection processes and components therefor."  (Id.)

**AFFYMETRIX REPLY RE AFFYMETRIX NO. 5**:

Enzo does not dispute that Section 5 of the Agreement includes "authorized uses" as delineated in sub-sections (a), (b), and (c).  The actual language of these provisions is set forth in AFFYMETRIX NO. 6.  Enzo does not assert that the provisions are in any way ambiguous.  Enzo merely argues that its interpretation of the Agreement.  There are no disputed material facts as it is undisputed that the Agreement speaks for itself, and interpretation of the Agreement is a matter of law for the Court.

**AFFYMETRIX NO. 6.**

The rights noted in Paragraph 5 above are addressed in the following provisions of Section 5 of the Agreement:

ENZO agrees to permit AFFYMETRIX to use PRODUCTS and ENZO's confidential information ("C.I.") as defined in Section 14 below only for the following purposes and AFFYMETRIX agrees that its use of same shall be limited to:

(a)     performing quality control procedures for the PRODUCTS,

(b)     optimizing the function of GeneChip® products and GeneChip® Assays; and

(c)     developing new gene chip products.

If any invention or product is conceived during the course of AFFYMETRIX' use of the PRODUCTS and/or ENZO's C.I. and is directed to the PRODUCTS, or their use, or improvements thereto, AFFYMETRIX will have the rights to such inventions and products for novel gene chip products, and ENZO will retain all other rights to such inventions and products including but not limited to those for labeling and detection processes and components therefore.

**ENZO RESPONSE TO AFFYMETRIX NO. 6:**

Disputed.

1.     Section 5(c) of the Agreement does not include the language "If any invention or product is conceived during the course of." This language appears as the first sentence of the penultimate paragraph of Section 5 of the Agreement. (Ex. 7 at § 5(c).)

**AFFYMETRIX REPLY RE AFFYMETRIX NO. 6:**

Enzo does not dispute the facts set forth in AFFYMETRIX NO. 6, which is a quote from the Agreement. Enzo simply notes that the paragraph beginning "If any invention . . . ." is not part of subpart (c) – and thus should not be aligned under subpart (c) – but rather is the first

sentence of the penultimate paragraph of Section 5 of the Agreement.  Affymetrix agrees.

Again, the Agreement speaks for itself.

**AFFYMETRIX NO. 7.**

>The Affymetrix package insert to which Enzo agreed stated that
"Enzo's products" were for "research use only."  Cowell Decl. ¶ 3.

**ENZO RESPONSE TO AFFYMETRIX NO. 7:**

Undisputed.

**AFFYMETRIX REPLY RE AFFYMETRIX NO. 7:**

Enzo does not dispute the facts set forth in AFFYMETRIX NO. 7.

**AFFYMETRIX NO. 8.**

>A Roche-created label is used with the AmpliChip CYP450 arrays.
Neither an Affymetrix label nor an Enzo label is so used.
Declaration of Stephen Will, dated December 20, 2006 ("Will
Decl.") ¶ 6.

**ENZO RESPONSE TO AFFYMETRIX NO. 8:**

Undisputed. However,

1.     Affymetrix collaborated with Roche to develop diagnostic products using

Affymetrix's genetic analysis chip technology, including the AmpliChip CYP450 microarray.  In

February 1998, Roche and Affymetrix entered into a Collaboration Agreement ("the Roche-

Affymetrix Agreement") to develop diagnostic products using Affymetrix's genetic analysis chip

technology.  (Ex. 18, Affymetrix, Inc.'s Responses and Objections to Enzo's First Set of

Interrogatories On Issues Raised By Its December 12, 2012 Motion For Summary Judgment,

Response to Interrogatory Nos. 5, 6.)

2.     Pursuant to the Roche-Affymetrix Agreement, "Affymetrix and Roche were to

co-develop mutually agreed upon diagnostic products, Affymetrix was to manufacture

GenChip® (*sic*) arrays for use in the contemplated diagnostic products, and [Roche] was to

conduct clinical trials, manage regulatory submissions, and market and sell the diagnostic

products." (Id. at Response to Interrogatory No. 6 (emphasis added).)

3.      In June, 2003, Roche and Affymetrix entered into a P450 Addendum Agreement

the purpose of which was to "bring P450 into the scope of the collaboration agreements entered

into in January 2003." (Id.) The Affymetrx-Roche collaboration "resulted in the June 2003

release of the Roche AmpliChip™ CYP450 Test." (Id. at Response to Interrogatory No. 5.)

**AFFYMETRIX REPLY RE AFFYMETRIX NO. 8:**

Enzo does not dispute the facts set forth in AFFYMETRIX NO. 8. Enzo adds additional

facts. Affymetrix does not dispute these additional facts for the purposes of Affymetrix's

summary judgment motion.

**AFFYMETRIX NO. 9.**

> One Enzo labeling reaction could be – and was – used by
> Affymetrix customers to generate labeled samples sufficient for
> application to multiple GeneChips, not just one. Cowell Decl. ¶ 4.

**ENZO RESPONSE TO AFFYMETRIX NO. 9:**

Disputed as incomplete.

1.      The parties contemplated that Affymetrix would purchase one labeling kit from

Enzo for every approximately ten GeneChip® arrays Affymetrix sold or expected to sell. (Ex. 7

at § 6; see also Ex. 10 (calculating total kits required for purchase from Enzo based on "10

sample[s] per kit").)

2.      Pursuant to paragraph 6 of the Agreement, Affymetrix was required to make an

annual reconciliation comparing the number of Products purchased from Enzo and the number of

GeneChip® arrays it sold to its customers. Based on the annual reconciliation, Affymetrix was

required to make "shortfall" payments to Enzo in accordance with a specified formula "to

account for the distribution, sales, and services provided by use of the GeneChip® array or array

sets in those instances where Products were purchased from Enzo in quantities less than would be used in conjunction with the GeneChip® array or array sets associated with a Product during such calendar year."  (Ex. 7 at § 6.)

3.      Affymetrix would "face a steep penalty to Enzo" if it did not purchase "enough kits commensurate with the number of GeneChip expression arrays that [it sold]."  (Ex. 11.)  In fact, Affymetrix made a payment to Enzo based on a "shortfall of 122 kits" sold in 1999, (Ex. 13), and provided to Enzo a "1999 Kit purchases reconciliation report" that contained a "Reconciliation Calculation" and a "Discrepancy Calculation."  (Ex. 15.)

4.      During the entire term of the Agreement, Affymetrix performed the annual reconciliation comparing the number of Products purchased from Enzo and the number of GeneChip® arrays it sold to its customers, as required by Section 6.  (Ex. 7 at § 6.)

5.      Affymetrix also calculated whether any shortfall payments were due to Enzo based on the premise that it was required to purchase one Enzo Product for every ten GeneChip products it sold.  (Ex. 15 (calculating total number of Enzo kits required to be purchased based on the number of GeneChip products sold and the number of samples to be analyzed per GeneChip product, "divided by 10 sample[s] per [Enzo] kit".)

**AFFYMETRIX REPLY RE AFFYMETRIX NO. 9**:

Enzo does not dispute the facts set forth in AFFYMETRIX NO. 9.  Instead, under the guise of adding "facts," Enzo merely argues its interpretation of Section 6 of the Agreement. Enzo does not state that Section 6 of the Agreement is in any way ambiguous, and the proper interpretation of Section 6 is a matter of law for the Court.

**AFFYMETRIX NO. 10.**

Affymetrix's customers could – and did – buy the Enzo kits from Enzo, or from Enzo's other distributors.  Cowell Decl. ¶ 5.

**ENZO RESPONSE TO AFFYMETRIX NO. 10**:

Undisputed.  However,

1.      Affymetrix has admitted that the Agreement did not prohibit Enzo from selling its products to Affymetrix's customers.  (Ex. 4 at 21:7-15.)

**AFFYMETRIX REPLY RE AFFYMETRIX NO. 10**:

Enzo does not dispute the facts set forth in AFFYMETRIX NO. 10.  Enzo adds an additional fact.  Affymetrix does not dispute this additional fact, and agrees that Enzo itself and other Enzo distributors were entitled to sell PRODUCTS or other Enzo labeling reagents directly to Affymetrix customers.

### ENZO'S "ADDITIONAL FACTS"

**ENZO NO. 1.**

Affymetrix microarray users must prepare all biological samples of nucleic acid (i.e., DNA or RNA) using labeling reagents, such as Enzo's technology, before they can be applied to a GeneChip® microarray for gene analysis.  (Ex. 2 at ¶¶ 20-27; Ex. 4 at 31:25-32:3; Ex. 3 at 30:6-15, 31:17-32:1).)

**AFFYMETRIX REPLY RE ENZO NO. 1**:

Not disputed for the purposes of Affymetrix's summary judgment motion.

**ENZO NO. 2.**

Although Affymetrix began commercial sales of GeneChip® products in 1994, it lacked the right and know-how to manufacture and distribute the labeling and detection system necessary for use with its GeneChips to perform its type of gene analysis technology.  (See Ex. 5 at 22:20-24:21; Ex. 6.)

**AFFYMETRIX REPLY RE ENZO NO. 2**:

Enzo does not offer any evidence to support these "facts."  The Exhibits to which Enzo cites show nothing more than that Affymetrix was aware of some Enzo patents.  Exhibit 5 is a portion of the 2007 deposition of then-Affymetrix employee Robert Lipshutz, who testified only that he had been told that Enzo "had patents that were related to labels and reagents."  Ex. 5 at 24:19-21.  Exhibit 6 is a letter from Enzo to Affymetrix enclosing certain Enzo patents.  Enzo offers no evidence whatsoever that Affymetrix lacked the "know-how" to manufacture and distribute labeling and detection reagents, nor does Enzo's "fact" state the time period when Affymetrix supposedly lacked such "know how."  In fact, Enzo provided evidence that Affymetrix had the "know how" well before the Agreement was entered into, but did not have the need or desire at that time to manufacture its own labeling and detection reagents.  Dr. Fodor testified that Affymetrix has "a long history of looking at different labeling reagents . . . making different examples of things" and experimenting with "different labeling compounds" since 1989.  Ex. 4 at 30:20-31:16.  Dr. Fodor further testified that Affymetrix explored labeling reagents from the beginning of the company but that having Enzo supply reagents for Affymetrix to distribute was preferable "because we could focus on other things rather than having to produce these things."  *Id*. at 50:2-8.

**ENZO NO. 3.**

Throughout the term of the Agreement, Affymetrix, by its own admission, actively pursued efforts aimed at developing its own labeled nucleotide kits to replace Enzo's Products. (See, e.g., Ex. 18; Ex. 4 at 30:20-31:16, 49:22-50:8.)

**AFFYMETRIX REPLY RE ENZO NO. 3**:

Not disputed.

**ENZO NO. 4.**

Affymetrix was "trying to design labeling reagents so as to not infringe the Enzo patents" so that Affymetrix would have a substitute for Enzo's Products.  (Ex. 17 at 114:8-11; see also Ex. 21.)

**AFFYMETRIX REPLY RE ENZO NO. 4**:

Not disputed.

**ENZO NO. 5.**

By January 2002, Affymetrix instituted a "formal effort to investigate alternative labeling reagent strategies" and to "develop Affymetrix's own proprietary nucleic acid labeling reagents." (Ex. 18; Ex. 22; Ex. 23.)

**AFFYMETRIX REPLY RE ENZO NO. 5**:

Not disputed.

**ENZO NO. 6.**

By the end of 2002, Affymetrix achieved its goal and successfully developed its own labeling reagents for RNA and DNA, (called RLR and DLR, respectively) that it planned to sell to its customers as "replacement products" for Enzo's Products.  (Ex. 24; Ex. 20; Ex. 22; Ex. 25; Ex. 26; Ex. 27.)

**AFFYMETRIX REPLY RE ENZO NO. 6**:

Not disputed for the purposes of Affymetrix's summary judgment motion.

**ENZO NO. 7.**

As part of its plan to transition from selling Enzo's Products to selling a replacement product containing RLR (called the "GeneChip IVT Amplification and Labeling Kit")

("GeneChip Labeling Kit") Affymetrix purchased more Products than it needed specifically to stockpile Enzo's products.  (Ex. 24.)

**AFFYMETRIX REPLY RE ENZO NO. 7**:

It is undisputed that Affymetrix built up an inventory of Enzo PRODUCTS such that by February of 2003, Affymetrix had enough inventory for fifteen (15) months.  Enzo's attribution of motive for Affymetrix's built-up an inventory of Enzo PRODUCTS is irrelevant – the underlying facts are not in dispute – and does not present a genuine issue of material fact.

**ENZO NO. 8.**

Beginning in April 2002, Affymetrix began inflating its purchase forecasts provided to Enzo pursuant to the Agreement.  (See Ex. 30.)

**AFFYMETRIX REPLY RE ENZO NO. 8**:

Not disputed for purposes of Affymetrix's summary judgment motion.  It is undisputed that Affymetrix purchased more PRODUCTS than it needed for 2002 and carried an inventory of Enzo PRODUCTS such that, by February of 2003, Affymetrix had quantities of Enzo PRODUCTS sufficient to fulfill customer orders for fifteen (15) months.

**ENZO NO. 9.**

By the end of 2002, Affymetrix purchased 42,000 Enzo Products, almost three times the number purchased in 2001, yet sold only approximately 17,000.  (Exs. 31; 15.)

**AFFYMETRIX REPLY RE ENZO NO. 9**:

Not disputed.

**ENZO NO. 10.**

As of January, 2003, Affymetrix planned to "order no more kits after receipt of the current order (expected end of March at the latest.)"  (Ex. 32.)  In March, 2003, with well over a

full year of inventory of Enzo kits on hand, Affymetrix determined that it would "not be ordering any more 900182 kits from Enzo."  (Ex. 30.)

**AFFYMETRIX REPLY RE ENZO NO. 10**:

Not disputed for purposes of Affymetrix's motion for summary judgment.

**ENZO NO. 11.**

By July 2003, more than a year before Enzo terminated the Agreement, Affymetrix had decided to move forward with the launch of its GeneChip Labeling Kit, regardless of whether Enzo terminated the agreement.  (See Ex. 38.)

**AFFYMETRIX REPLY RE ENZO NO. 11**:

Disputed in that Enzo mistakenly refers to July 2003 as "more than a year before Enzo terminated the Agreement."  The parties agree that Enzo gave notice of termination on October 28, 2003, and terminated the Agreement effective November 12, 2003.  Opp. Brief at 9. Whether in July 2003 Affymetrix had decided to move forward with the launch of its GeneChip Labeling Kit, regardless of whether Enzo terminated the agreement, is not a material fact because it is undisputed that Enzo terminated the Agreement.  For purposes of its motion for summary judgment, Affymetrix does not dispute this irrelevant and immaterial "fact."

**ENZO NO. 12.**

Affymetrix "commercially launched RLR (as part of its GeneChip® IVT Labeling Kit) in December 2003 . . . and commercially launched DLR in 2004."  (Exs. 18; 39; 44.)

**AFFYMETRIX REPLY RE ENZO NO. 12**:

Not disputed.

**ENZO NO. 13.**

RLR, DLR, and the GeneChip IVT Labeling Kit are not gene chip products.  (Ex. 4 at 68:12-22, 70:22-71:12.)

**AFFYMETRIX REPLY RE ENZO NO. 13**:

This statement is a legal conclusion, and not a statement of fact, and merely reflects Enzo's interpretation of the Agreement.  Affymetrix believes that the proper legal conclusion is that "RLR, DLR, and the GeneChip IVT Labeling Kit" are "gene chip products."  It is for the Court to interpret the Agreement as a matter of law.

**ENZO NO. 14.**

In addition to granting Affymetrix limited distribution rights to Enzo's Products, the Agreement also granted Affymetrix limited rights to use Enzo Products for three circumscribed purposes.  (Ex. 7 at § 5.)

**AFFYMETRIX REPLY RE ENZO NO. 14**:

It is undisputed that subsections (a), (b), and (c) Section 5 of the Agreement set forth the authorized uses of PRODUCTS.  The Agreement speaks for itself and the interpretation of these provisions is a matter of law for the Court.

**ENZO NO. 15.**

Enzo authorized Affymetrix to use Enzo's Products "only for the following purposes . . . limited to: (a) performing quality control procedures for the Products; (b) optimizing the function of GeneChip® products and GeneChip® Assays; and (c) developing new gene chip products." (Id.)

**AFFYMETRIX REPLY RE ENZO NO. 15**:

Not disputed.

**ENZO NO. 16.**

Both Enzo and Affymetrix, however, understood that the main objective of the Agreement was to provide the terms of a relationship in which Affymetrix would purchase labeling reagents from Enzo and "resell them as a distributor,"  (Ex. 5 at 44:18-20; see Ex. 16 at 29:13-16; Ex. 8 at 34:13-15; Ex. 17 at 49:22-50:6), and that Affymetrix's limited rights to use Enzo's Products were incidental to its rights to distribute Enzo's Products.  (See Ex. 8 at 31:15-32:16; Ex. 4 at 116:17-20.)

**AFFYMETRIX REPLY RE ENZO NO. 16**:

This statement contains legal conclusions.  Neither party contends that the Agreement is in any way ambiguous and, accordingly, the interpretation of the Agreement is a matter of law for the Court.

**ENZO NO. 17.**

To the extent that Affymetrix's use of the Products produced improvements directed to the Products, it was required to transfer rights in those inventions back to Enzo. As set forth in Section 5 of the Agreement, Enzo and Affymetrix agreed that if Affymetrix conceived "any invention or product . . . during the course of Affymetrix' use of the Products and/or Enzo's [Confidential Infomration] (*sic*)," and such invention or product was "directed to the Products, or their use, or improvements thereto," Affymetrix would "have the rights to such inventions and products for novel gene chip products," and Enzo would "retain all other rights to such inventions and products including but not limited to those for labeling and detection processes and components therefore."  (Ex. 7 at § 5.)

**AFFYMETRIX REPLY RE ENZO NO. 17**:

 This statement is a legal conclusion.  Enzo does not contend that the Section 5 grant-back provision of the Agreement is ambiguous in any way.  Enzo merely argues its interpretation of Section 5 of the Agreement.  The proper interpretation of the Agreement is the providence of the Court, to be decided as a matter of law.

**ENZO NO. 18.**

 This provision reflects the parties' intent to allocate the rights to any new products or inventions conceived by Affymetrix during the course of its use of Enzo's Products in accordance with the parties' respective lines of business, i.e., Affymetrix was to retain rights to "novel gene chip products" and Enzo was to retain rights to all other products, "including but not limited to those for labeling and detection processes and components therefore."  (Id.)

**AFFYMETRIX REPLY RE ENZO NO. 18**:

 This statement is a legal conclusion.  Enzo does not contend that the Section 5 grant-back provision of the Agreement is ambiguous in any way.  The proper interpretation of the Agreement is for the Court to decide as a matter of law.

**ENZO NO. 19.**

 Affymetrix collaborated with Roche to develop diagnostic products using Affymetrix's genetic analysis chip technology, including the AmpliChip CYP450 microarray.  In February 1998, Roche and Affymetrix entered into a Collaboration Agreement ("the Roche-Affymetrix Agreement") to develop diagnostic products using Affymetrix's genetic analysis chip technology.  (Ex18.)

**AFFYMETRIX REPLY RE ENZO NO. 19**:

 Not disputed.

**ENZO NO. 20.**

Pursuant to the Roche-Affymetrix Agreement, "Affymetrix and Roche were to co-develop mutually agreed upon diagnostic products, Affymetrix was to manufacture GenChip® arrays for use in the contemplated diagnostic products, and [Roche] was to conduct clinical trials, manage regulatory submissions, and market and sell the diagnostic products."  (Id. at Response to Interrogatory No. 6 (emphasis added).)

**AFFYMETRIX REPLY RE ENZO NO. 20**:

Not disputed.

**ENZO NO. 21.**

The Agreement did not prohibit Enzo from selling its products to Affymetrix's customers.  (Ex. 4 at 21:7-15.)

**AFFYMETRIX REPLY RE ENZO NO. 21**:

Not disputed.

**ENZO NO. 22.**

In June, 2003, Roche and Affymetrix entered into a P450 Addendum Agreement the purpose of which was to "bring P450 into the scope of the collaboration agreements entered into in January 2003."  (Id.)  The Affymetrx-Roche (*sic*) collaboration "resulted in the June 2003 release of the Roche AmpliChipTM CYP450 Test." (Id. at Response to Interrogatory No. 5.)

**AFFYMETRIX REPLY RE ENZO NO. 22**:

Not disputed.

Dated:  May 15, 2013                          Respectfully submitted,


                                              By:___ /s/ Peter E. Root_____

                                              Peter E. Root
                                              Email:  peter.root@kayescholer.com
                                              Michael J. Malecek
                                              Email:  michael.malecek@kayescholer.com
                                              KAYE SCHOLER LLP
                                              Two Palo Alto Square
                                              3000 El Camino Real, Suite 400
                                              Palo Alto, California 94306
                                              Telephone:  (650) 319-4500

                                              *Attorneys for Defendant Affymetrix, Inc.*