**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ENZO BIOCHEM, INC., and ENZO LIFE SCIENCES, INC. | x : : : : | |
| Plaintiffs, | : : | |
| v. | : : | No. 04 CV 1555 (RJS) |
| AFFYMETRIX, INC. | : : | |
| Defendant. | : : x | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS ENZO BIOCHEM, INC. AND ENZO LIFE SCIENCES, INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S DECEMBER 6, 2013 <u>MEMORANDUM AND ORDER</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

    A.    Reconsideration Is Warranted Because The Court Misapprehended The Plain Language Of Section 6 Of The Agreement And Overlooked Evidence Supporting Enzo's Interpretation Of The Shortfall Formula ................... 2

    B.    Enzo Adequately Pled Its Shortfall Claim Under Section 6 Of The Agreement ....................................................................................................................4

    C.    Affymetrix's Opportunity To Challenge The Adequacy Of Enzo's Pleading Of Its Shortfall Claim Is Long Past..........................................................................6

CONCLUSION................................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Haus v. City of New York,*
   No. 03 Civ. 4915, 2006 WL 3462122 (S.D.N.Y. Nov. 30, 2006) ..............................................4

*Honeywell Int'l Inc. v. Air Prods. & Chemicals, Inc.,*
   858 A.2d 392, 396 (Del. Ch. 2004)...................................................................................5

**PRELIMINARY STATEMENT**

Having litigated Enzo's "shortfall claim" under section 6 of the parties' distributorship agreement (the "Agreement") solely on its merits during two rounds of summary judgment briefing, Affymetrix now opportunistically latches on to a formulaic reading of Enzo's complaint to avoid reconsideration of the Court's ruling dismissing Enzo's claim. Affymetrix's assertion that Enzo's shortfall claim based on Affymetrix's failure to purchase sufficient quantities of Enzo Products and render the resulting shortfall payment to Enzo is "new," or somehow "unpleaded," is not only specious, it is too little too late.

It is undisputed that Enzo specifically and adequately alleged that Affymetrix breached section 6 of the Agreement by failing to make a shortfall payment to Enzo. Regardless of the specific verbiage Enzo used to express its claim in its now-ancient complaint, Enzo's claim under section 6 of the Agreement has always been based on Affymetrix's failure to properly apply that provision's shortfall formula and account for the resulting shortfall in payments to Enzo. It is similarly undisputed that Affymetrix has always understood this to be the basis of Enzo's claim. In fact, Affymetrix understood Enzo's claim well enough that it filed a competing complaint against Enzo less than two weeks after Enzo's complaint was filed, in which it alleged that "***[p]ayments for labeling reagents not purchased on a per-chip or chip set basis, as required by Enzo***, are unlawful and constitute unfair competition." (Affymetrix Complaint, dated Nov. 10, 2003 ("Affy Compl.") (Dkt. 90-2), at ¶ 95 (emphasis added)).

Moreover, the Court's December 6, 2013 Memorandum and Order (the "Order") was not, as Affymetrix asserts, based on the Court's failure to "recognize[] that Enzo pivoted from [one] theory to a new theory that Affymetrix failed to account for a shortfall in Affymetrix's 'purchases' of Enzo Products." (Affymetrix Opposition to Motion for Reconsideration, dated

January 13, 2014 ("Affy. Opp.") (Dkt. 116), at 1). Instead, and as respectfully set forth in Enzo's opening brief, the Court misapprehended the plain language of the parties' Agreement in finding that Section 6 requires a comparison between Affymetrix's sales of both Enzo Products and GeneChip® arrays, and overlooked evidence supporting Enzo's interpretation of that provision's shortfall formula.

In a further attempt at revisionism, Affymetrix devotes more than ten pages of its opposition submission to raising new arguments on the evidence Enzo proffered on summary judgment and which the Court overlooked. Affymetrix failed to object to or even question the specific evidence Enzo put forth supporting its interpretation of the ratio of Enzo Products required to be purchased to GeneChip® product. Instead, Affymetrix elected to challenge Enzo's claim that Affymetrix owed it a shortfall payment based on its 2003 purchases of Enzo Products based on an unreasonable reading of the provision's timing requirements that would effectively negate Affymetrix's contract obligations for the last year of the contract term. Having passed up its opportunity to raise these arguments on summary judgment, Affymetrix does not now get a second bite at the apple.

## ARGUMENT

    **A.**    **Reconsideration Is Warranted Because The Court Misapprehended The Plain Language Of Section 6 Of The Agreement And Overlooked Evidence Supporting Enzo's Interpretation Of The Shortfall Formula**

In its Order, the Court quoted Section 6[1] in its analysis of Enzo's shortfall claim, yet described the "stultifying language" of the provision as requiring Affymetrix "to pay Enzo for

---

[1] The Court found that "Section 6 of the Agreement required that

[a]t the end of each calendar year, Affymetrix will additionally pay Enzo an amount equal to 0.50 of Enzo's catalog price for Products sold hereunder to account for the distribution, sales and services provided by the use of the Genechip® arrays or array sets in those instances where Products were purchased from Enzo in quantities less than

2

any *shortfall in sales of Enzo's Products*." (Order at 10).  The Court went on to grant summary judgment on Enzo's claim under Section 6 because it found "no evidence to support an inference that '*Products were purchased from Enzo* in quantities less than would be used in conjunction with the GeneChip® arrays or array sets associated with a Product.'"  (*Id.* at 11) (emphasis added).  The Order's conflicting references to Section 6 as requiring a comparison of the number of Enzo Products that Affymetrix both purchased and sold reflect the Court's misapprehension of the plain language of the Agreement, and reconsideration is warranted on this basis alone.

As detailed in Enzo's opening brief, Enzo also seeks reconsideration based on the Court having overlooked Enzo's evidence of the specific ratio used by the parties of Enzo Products purchased to GeneChip® products sold, and the existence of a shortfall based on 2003 purchases.  (*See* Enzo Memorandum of Law in Support of Motion for Reconsideration, dated Dec. 30, 2013 ("Enzo Moving Br."), at 5-9).  On summary judgment, Affymetrix (i) failed to object to or contest the authenticity or content of the evidence, (ii) relied on and adopted said evidence in its reply submission on summary judgment, (iii) did not challenge Enzo's assertion that Section 6 required a 1:10 ratio of Enzo Products purchased to GeneChip® products sold, and (iv) did not deny Enzo's assertion that Affymetrix did not purchase enough Enzo Products in 2003 to satisfy

---

would be used in conjunction with the Genechip® arrays or array sets associated with a Product during such calendar year.  If the discrepancy between the Genechip® arrays or array sets sold and used and Product provided by Enzo to Affymetrix is greater than ten percent (10%), then Affymetrix will additionally pay Enzo an amount equal to 0.60 of Enzo's catalog price for such Products.  Affymetrix can adjust this annual payment if it can provide reliable written documentation to Enzo that the Products or any other labeling reagent selected by an Affymetrix customer for use with the GeneChip® assays or array sets were sold directly by Enzo or authorized by Enzo distributors.

(DA § 6)."

(Order at 10).

a 1:10 ratio. (*Id.* at 7-9). Having passed up its opportunity to address Enzo's interpretation of the Agreement and supporting evidence, Affymetrix is precluded from doing so now. *See Haus v. City of New York*, No. 03 Civ. 4915, 2006 WL 3462122, at *1 (S.D.N.Y. Nov. 30, 2006) (rejecting arguments and additional demand made for the first time in opposition to motion for reconsideration as "procedurally improper").[2]

### B. Enzo Adequately Pled Its Shortfall Claim Under Section 6 Of The Agreement

Affymetrix's arguments that Enzo "invited" the Court's misapprehension, and "induced" the Court to do anything, let alone 'gather[] that Affymetrix had to pay Enzo for any shortfall in sales of Enzo's Products. . . .'" (Affy Opp. at 11), are specious. Both Enzo's Complaint and opposition submission on summary judgment make clear that the basis of its claim under Section 6 is that Affymetrix purchased insufficient quantities of Enzo Products and failed to make the resulting shortfall payment. In its opposition brief, under the heading "Affymetrix Breached The Agreement By Failing To Account For A Shortfall In Purchases," Enzo responded to Affymetrix's mischaracterizations of its "allegations with respect to Affymetrix's purchase of insufficient quantities of Enzo's Products and failure to account for the shortfall in payments to Enzo." (Enzo Memorandum of Law in Opposition to Affymetrix's Motion for Summary Judgment, dated May 1, 2013 ("Enzo SJ Opp."), at 19). Enzo explained that its shortfall claim was

> based on the valid premise that 'one of Enzo's Labeling Products (a kit for 10 reactions) was required to be sold for approximately every 10 of Affymetrix's GeneChips, (Compl. at ¶ 45), and based on this premise, 'Affymetrix's sale of Enzo Labeling Products was actually significantly less than anticipated given the

---

[2] Should the Court consider any of the procedurally improper arguments raised by Affymetrix on pages 12-22 of its Opposition on this motion, Enzo respectfully requests leave to file a brief sur-reply to respond in kind. Here we note only that Affymetrix's unsupported arguments, in the nature of counsel's *ipse dixit,* are so convoluted as to further demonstrate section 6's ambiguity and questions of fact that require denial of summary judgment.

4

> corresponding number of GeneChips sold.' (*Id.* at ¶ 47). The evidence supports Enzo's claim as considered in accordance with its allegations and not Affymetrix's interpretation. . . . Affymetrix also calculated whether any shortfall payments were due to Enzo based on the premise that it was required to purchase one Enzo Product for every ten GeneChip products it sold.

(Enzo SJ Opp. at 19-20).

Enzo does not, as Affymetrix baldly asserts, "concede[] that its pleaded claim is not supported by the Agreement." (Affy Opp. at 8). To be clear, as set forth above, Enzo's allegations as to the insufficient quantities of Enzo Products sold by Affymetrix are supported by the Agreement, and the evidence, and form the valid premise for its claim under Section 6 as to the insufficient quantities of Enzo Products purchased by Affymetrix. Enzo also specifically pled that Affymetrix failed to purchase sufficient (or after February, any) quantities of Enzo Products in 2003. (Enzo Complaint, dated Oct. 28, 2003 ("Enzo Compl."), at ¶ 81).

The specific language of the Agreement, however, makes clear that even had Enzo not specifically pled a purchase shortfall claim, such a claim was an integral part of the allegations that were pled. As the Court found, based on Enzo's allegations and the language of the Agreement[3], the Agreement is a requirements contract under which "Affymetrix was obligated . . . . to purchase its Product requirements from Enzo," (Order at 12) (*citing* Agreement § 1). Therefore, any sale by Affymetrix of an Enzo Product necessarily included a requirement by Affymetrix to purchase that Product from Enzo. *See Honeywell Int'l Inc. v. Air Prods. & Chemicals, Inc.*, 858 A.2d 392, 396 (Del. Ch. 2004) (Strine, C.) (holding that "[u]nder [the

---

[3] For example, as alleged in Paragraph 33 of its Complaint, Affymetrix's payment- obligation (and correspondingly Enzo's income- right) under the Agreement stems from its obligation to purchase "certain Enzo products." (Enzo Compl. at ¶ 33). As alleged in Paragraph 36 of its Complaint, "[p]ursuant to the Agreement Affymetrix was expressly precluded from: purchasing the Products from any other source and Enzo was to be the sole source of the types of Products set forth on Exhibit B." (*Id.* at 36) (*citing* Agreement ¶¶ 1(a), 1(c)).

5

contract's] requirements obligation, if Air Products sells a "Product" to a "Customer," it must obtain that Product from Honeywell"). Coupled with the contract language that required Affymetrix to make a "shortfall" payment to the extent there was a "discrepancy between the GeneChip® arrays or array sets sold and used and PRODUCT provided by ENZO to AFFYMETRIX . . . ." (Agreement § 6), it is plain that sales must be matched to purchases within each year.

      C.      **Affymetrix's Opportunity To Challenge The Adequacy of Enzo's Pleading Of Its Shortfall Claim Is Long Past**

Though Affymetrix would like to pretend otherwise, the Court's ruling was not based on a finding that Enzo's shortfall claim as presented on summary judgment was somehow different than as pled in its Complaint. *See generally* Rule 56(c). Indeed, any such ruling would have been *sua sponte,* given that Affymetrix never challenged the adequacy of Enzo's pleading of this claim until now.

Enzo's opposition papers on summary judgment did not, as Affymetrix erroneously contends, seek to "recast" its claim under Section 6 "from the pleaded one predicated on a shortfall in *sales* to a new claim predicated on a shortfall in *purchases.*" (Enzo SJ Opp. at 6).[4] Enzo's claim under Section 6 of the Agreement has always been based on Affymetrix's failure to properly apply that provision's shortfall formula and account for the resulting shortfall in payments to Enzo. Though Enzo may not have expressed its claim verbatim across its many filings and pleadings during the over decade long course of this litigation, the basis of that claim remained the same. Further, as demonstrated above, Enzo's complaint and summary judgment submission both reflect that the basis of its claim was and is a shortfall in payments to Enzo for

---

[4] Affymetrix does not, because it cannot, argue that Enzo never pled ***any*** claim for breach of contract under section 6 of the Agreement. (*See* Enzo Compl. at ¶¶ 45-49). Accordingly, this Court's rulings in the related *Amersham, PerkinElmer,* and *Roche* cases, cited by Affymetrix here, are inapposite.

purchase of insufficient quantities of Enzo Products.  Accordingly, Affymetrix's assertion that Enzo somehow tried to pull a "sleight of hand" is simply unfounded.

That Affymetrix would even allude to the possibility that Enzo somehow engaged in trickery is astonishing, given Affymetrix's own allegations against Enzo made less than two weeks after Enzo filed its complaint in this action.  Affymetrix cannot ignore that its allegations against Enzo in support of its purported claim that Section 6 is "anticompetitive" reflect Affymetrix's understanding that (i) Section 6's shortfall measure is based on Affymetrix's purchases of Enzo Products, and (ii) Enzo alleged that Affymetrix purchased an insufficient quantity of Products fom Enzo and that it therefore owed a shortfall payment to Enzo pursuant to Section 6.  Specifically, Affymetrix alleged that:

> **(i)** *Leveraging its control over labeling reagents used in Affymetrix's GenChip® products, Enzo required that Affymetrix agree in Section 6 of the Distributorship Agreement to pay a per-GeneChip®-array penalty equal to 0.50 of Enzo's catalogue price for Enzo labeling reagents 'to account for the distribution, sales and services provided by the use of the GeneChip® arrays or array sets in those instances where PRODUCTS were purchased from ENZO in quantities less than would be used in conjunction with the GeneChip® arrays or array sets associated with a PRODUCT during such calendar year*;
>
> (ii) In effect, if an Affymetrix customer chooses not to purchase Enzo labeling reagents from Affymetrix (or another Enzo distributor) as part of the purchase of an Affymetrix GeneChip® array, or if Affymetrix wants to resell a non-Enzo labeling reagent not purportedly covered by an Enzo patent with its GeneChip®, *Affymetrix under these terms is required to pay for Enzo labeling reagents for such GeneChip® array regardless of whether it in fact purchased an Enzo labeling reagent*;
>
> (iii) The purpose and intent of Enzo in including Section 6 is to impede the ability of Affymetrix to offer other labeling reagents not covered by Enzo patents in competition with Enzo labeling reagents;

7

      (iv)    The anticompetitive intent behind the provision is plainly evident in Enzo's own words with respect to its attempt to enforce Section 6:

> "[m]oreover, the shortfall also suggests that Affymetrix may be supplying a competing product with its GeneChip in violation of the Agreement. *Any sale or distribution of such product* whether manufactured by Affymetrix or a third party would of course be a material violation of the Agreement and result in *additional consequential damages*."

            Enzo Complaint at ¶ 48.

      (v)    *Payments for labeling reagents not purchased on a per-chip or chip set basis, as required by Enzo*, are unlawful and constitute unfair competition.

(Affy Compl. at ¶¶ 88, 90, 93, 94, 95 (all emphases added)).

Moreover, the parties have always understood that the crux of Enzo's claim under Section 6 of the Agreement was and is a dispute as to whether there is a shortfall in the amount that Affymetrix paid to Enzo for its purchase of Products pursuant to the Agreement. In its opening brief on summary judgment, Affymetrix described Section 6 as requiring "Affymetrix to pay an additional amount 'in those instances where PRODUCTS were purchased from ENZO in quantities less than *would be used* in conjunction with the GeneChip® arrays or *array sets* associated with a PRODUCT during such calendar year.'" (Affymetrix Memorandum In Support of Motion for Summary Judgment, dated Dec. 21, 2012 ("Affy SJ Br."), at 17).

Enzo's opposition on this claim was based on the precise theory which Affymetrix now contends is new and unpled. (*Compare* Enzo SJ Opp. at 19-20 *with* Enzo Moving Br. at 4-7). In its reply papers, however, Affymetrix responded to Enzo's arguments on their merits without so much as a passing reference to Enzo's complaint, let alone to the purported differences between Enzo's Section 6 claim as pled and "recast" on summary judgment. (Affymetrix Reply Memorandum in Support of Motion for Summary Judgment, dated May 15, 2013, at 5-6).

8

Indeed, Affymetrix helpfully explained that "Enzo's sole argument [on its shortfall claim] is that 'Affymetrix was required to remit a shortfall payment to Enzo of between $6,569,332 and $7,232,932 based on its **2003 purchases** of Enzo Products.'" (*Id.* at 5). Specifically, Affymetrix challenged Enzo's argument on the grounds that (i) "Affymetrix had no need to **purchase** any quantity of PRODUCTS in 2003 because it had already purchased PRODUCTS from Enzo in quantities sufficient to cover all of 2003" (emphasis added); (ii) "[t]here is nothing in Section 6 that required Affymetrix to match the quantities of PRODUCTS **purchased** to the quantities used in the same year" (emphasis added); and (iii) "Enzo terminated the Agreement before the end of calendar year 2003." (*Id.* at 5-6). In the two pages of its reply brief devoted to these arguments, Affymetrix specifically acknowledged that "[a] shortfall is triggered under Section 6 only 'where PRODUCTS were purchased from Enzo in quantities less than would be used in conjunction with the GeneChip® arrays or array sets associated with a PRODUCT during such calendar year,'" that the "relevant question" asked by Section 6 is "whether GeneChip® arrays sold during the year can be matched with Affymetrix's purchases of PRODUCTS from Enzo. . . .", and that the relevant obligation was that of Affymetrix "to purchase a sufficient annual quantity of PRODUCT." (*Id.* at 5-6).

Affymetrix's revisionist argument that Enzo "recast" its shortfall claim in opposition to Affymetrix's 2012 motion for summary judgment is further belied by its admission in support of its 2007 motion for summary judgment[5] that "[t]he parties agree that Enzo's claim of 'shortfalls' in Affymetrix's payments rises or falls on whether, as Enzo asserts, Agreement §6 'states that there is a one-to-one ratio' between the microarrays that Affymetrix sold and the Enzo labeling

---

[5] Affymetrix acknowledged that its 2012 motion for summary judgment (which was re-noticed in April 2013) "was a renewal of the motion for summary judgment that Affymetrix had filed in January 2007, and was based on the same grounds and supporting declarations as the 2007 motion." (Affy Opp. at 3 n.1).

9

reactions used with those arrays." (Affymetrix Memorandum in Support of Motion for Summary Judgment, dated January 3, 2007 (Dkt. 23), at 8).

## CONCLUSION

For the foregoing reasons, Enzo respectfully requests that the Court reconsider and vacate its prior ruling in its Memorandum and Order, entered December 9, 2013, granting Affymetrix summary judgment on Enzo's claim for breach of contract regarding payment shortfalls pursuant to Section 6 of the parties' agreement, and grant to Enzo such other relief the Court may deem appropriate.

Dated:  January 21, 2013

/s/ Ronald D. Lefton
Michael Burrows
Jeffrey R. Mann
Ronald D. Lefton
Lauren B. Grassotti
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
(212) 801-9200
*Attorneys for Plaintiffs Enzo Biochem, Inc., and Enzo Life Sciences, Inc.*
