# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENZO BIOCHEM, INC., *et al.*,       ) | |
|                   Plaintiffs,   ) | 04-CV-01555 (RJS) |
| vs.   ) | |
| AFFYMETRIX, INC.,   ) | |
|                   Defendant.   ) | |
| AFFYMETRIX, INC.,   ) | |
|                   Plaintiff,   ) | 03-CV-08907 (RJS) |
| vs.   ) | |
| ENZO BIOCHEM, INC., *et al.*,   ) | |
|                   Defendants.   ) | |

## MEMORANDUM OF LAW IN SUPPORT OF ENZO'S MOTIONS *IN LIMINE*

# TABLE OF CONTENTS

ARGUMENT ..................................................................................................................... 2

I.   MOTION *IN LIMINE* NO. 1—REFERENCES TO "PRICE MANIPULATION" ........... 2

    A.   References to "Price Manipulation" Should be Precluded as Irrelevant ............... 3

    B.   References to "Price Manipulation" Should be Precluded Under Rule 403
        as Unfairly Prejudicial ......................................................................................... 5

II.   MOTION IN LIMINE NO. 2—UNDISCLOSED WITNESSES ..................................... 6

III.   MOTION IN LIMINE NO. 3—STRIKING DAMAGES THEORY/CLAIM ................ 11

IV.   MOTION IN LIMINE NO. 4—GT'S WITHDRAWAL MOTION ................................ 15

V.   MOTION IN LIMINE NO. 5—FORMER CLAIMS AND OTHER
    PROCEEDINGS ............................................................................................................ 17

    A.   Argument or Evidence Regarding Claims No Longer in These Actions
        Should be Precluded Under Rules 402 and 403 ................................................... 18

        1.   Argument or Evidence of Other Claims is Irrelevant ............................... 18

        2.   Argument or Evidence of Other Claims Is Unfairly Prejudicial
            Under Rule 403 ....................................................................................... 19

    B.   Argument or Evidence Regarding Other Lawsuit Should be Precluded
        Under Rules 402 and 403 ..................................................................................... 20

    C.   Evidence of Court Rulings in Other Lawsuits Should Also be Precluded as
        Inadmissible Hearsay ........................................................................................... 21

VI.   MOTION IN LIMINE NO. 6—SPECIFIC COMPENSATION ..................................... 22

CONCLUSION ................................................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Agence France Presse v. Morel*,
   293 F.R.D. 682 (S.D.N.Y. 2013) ...................................................................................13, 14

*Am. Stock Exch., LLC v. Mopex, Inc.*,
   215 F.R.D. 87 (S.D.N.Y. 2002) ...............................................................................................7

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
   No. 04 Civ. 10014 PKL, 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) ...........................6, 23

*Arlio v. Lively*,
   474 F.3d 46 (2d Cir. 2007).............................................................................................18, 21

*Bd. of Trs. of AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.*,
   860 F. Supp. 2d 251 (S.D.N.Y. 2012)...................................................................................21

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*,
   141 F. Supp. 2d 320 (E.D.N.Y. 2001) ..................................................................................22

*Chapple v. Fahnestock & Co., Inc.*,
   No. 03-4989 (TLM), 2010 WL 3118638 (E.D.N.Y. Aug. 5, 2010) .......................................16

*Chrisholm v. Sloan-Kettering*,
   No. 09 Civ. 8211(VM), 2011 WL 2015526 (S.D.N.Y. May 13, 2011)...................................19

*Cook v. Hatch Assocs.*,
   No. 02 Civ. 0065A, 2007 WL 1267023 (W.D.N.Y. April 30, 2007) ....................................20

*In re Crude Oil Commodity Futures Litig.*,
   913 F. Supp. 2d 41 (S.D.N.Y. 2012).......................................................................................4

*Design Strategy, Inc. v. Davis*,
   469 F.3d 284 (2d Cir. 2006)............................................................................................13, 14

*Djangmah v. Falcione*,
   No. 08 Civ. 4027(KPF), 2013 WL 6388364............................................................................5

*Dollman v. Mast Indus.*,
   No. 08 Civ. 10184 (WHP), 2011 WL 3911035 (S.D.N.Y. Sept. 6, 2011) ............................19

*Figueroa v. Boston Scientific Corp.*,
   No. 00 Civ. 2922(DC), 2003 WL 21488012 (S.D.N.Y. June 27, 2003).................................21

*Fischer & Mandell, LLP v. Citibank, N.A.*,
   632 F.3d 793 (2d Cir. 2011)..................................................................................................12

*Gaffney v. Dep't of Info. Tech. and Telecomms.*,
   579 F. Supp. 2d 455 (S.D.N.Y. 2009)...................................................................................22

*Guidi v. Inter-Continental Hotels Corp.*,
   No. 95 Civ. 9006(LAP), 2003 WL 1907904 (S.D.N.Y. April 16, 2003) ..............................21

*Hamza v. Saks Fifth Ave, Inc.*,
   No. 07 Civ. 5974(FPS), 2011 WL 6187078 (S.D.N.Y. Dec. 5, 2011) ...................................19

*Harkabi v. SanDisk Corp.*,
   No. 08 Civ. 8203 (WHP), 2012 WL 826892 (S.D.N.Y. March 12, 2012) ............................14

*Highland Capital Mgmt., L.P. v. Schneider*,
   551 F.Supp.2d 173 (S.D.N.Y. 2008).......................................................................................6

*Kinsey v. Cendant Corp.*,
   588 F. Supp. 2d 516 (S.D.N.Y. 2008).....................................................................................23

*Kobrand Corp. v. Abadia Retuerta S.A.*,
   12 Civ. 154, 2012 WL 5851139 (S.D.N.Y. Nov. 19, 2012) ....................................................13

*Laydon v. Mizuho Bank, Ltd.*,
   No. 12–cv–3419 (GBD), 2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) ................................4

*LNC Investments, Inc. v. First Fidelity Bank, N.A. New Jersey*,
   173 F.3d 454 (2d Cir. 1999)...................................................................................................12

*L–3 Commc'ns Corp. v. OSI Sys., Inc.*,
   No. 02 Civ. 9144(PAC), 2006 WL 988143 (S.D.N.Y. Apr. 13, 2006) ...................................23

*Morritt v. Stryker Corp.*,
   No. 07-CV-2319, 2011 WL 3876960 (E.D.N.Y. Sept. 1, 2011) ......................................10, 14

*Pal v. New York Univ.*,
   No. 06CIV.5892PACFM, 2008 WL 2627614 (S.D.N.Y. June 30, 2008) ..............................11

*Park W. Radiology v. CareCore Nat. LLC*,
   675 F. Supp. 2d 314 (S.D.N.Y. 2009)...............................................................16, 20, 21, 22

*Pasteur v. Enzo Biochem, Inc. et al.*,
   No. 91-CV-02955 (LJF).........................................................................................................18

*Patterson v. Balsamico*,
   440 F.3d 104 (2d Cir. 2006).............................................................................................9, 11

*Rienzi & Sons Inc. v. N. Puglisi & F. Industria Paste*,
   No. 08-CV-2540 (DLI)(JMA), 2011 WL 1239867 (E.D.N.Y. March 30, 2011)...................14

*Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*,
   756 F. Supp. 2d 598 (D. Del. 2010)......................................................................................20

*Roche Diagnostics Operations, Inc. v. Lifescan Inc.*,
   452 Fed. Appx. 989 (Fed. Cir. 2012).....................................................................................20

*Serin v. N. Leasing Sys., Inc.*,
   7:06-CV-1625, 2010 WL 6501661 (S.D.N.Y. Oct. 26, 2010)..................................................9

*United States v. Morel*,
   751 F. Supp. 2d 423 (E.D.N.Y. 2010) ...................................................................................16

*Wilson v. Merrill Lynch & Co., Inc.*,
   671 F.3d 120 (2d Cir. 2011)....................................................................................................4

## Rules

Fed. R. Civ. P. 26 .................................................................................7, 9, 13

Fed. R. Civ. P. 37 .................................................................................7, 9, 13

Fed. R. Evid. 401 ..............................................................................3, 15, 18, 22

Fed. R. Evid. 402 ....................................................................1, 3, 18, 19, 20, 22, 23

Fed. R. Evid. 403 .................................................................1, 5, 15, 19, 20, 21, 23

Fed. R. Evid. 801 ...........................................................................................17

Fed. R. Evid. 802 ...........................................................................................21

Fed. R. Evid. 804 ...........................................................................................17

## Statutes

15 U.S.C.A. § 78j(b) .........................................................................................4

## Other Authorities

Black's Law Dictionary ......................................................................................4

Joseph M. McLaughlin, ed., *Weinstein's Fed. Evid.* § 403.04[1][b] (2d ed. 2000)........................5

Enzo Biochem, Inc. and Enzo Life Sciences, Inc. (collectively, "Enzo"), through their counsel, respectfully submit this Memorandum of Law in Support of their Motions *in Limine*. Enzo moves in *limine* as follows:

Motion No. 1:  To preclude Affymetrix, Inc. ("Affymetrix") from making any reference at trial to Enzo purportedly engaging in "price manipulation."  The term "price manipulation" is a loaded term that relates to a specific type of securities fraud or antitrust claim far afield from Affymetrix's breach of contract claims in this case.  Any such reference is not relevant to Affymetrix's claims and would serve only to inflame the jury and unfairly prejudice Enzo.

Motion No. 2:  To preclude testimony at trial of three witnesses Affymetrix failed to identify until the eve of trial, not even in response to (or in supplementation of) an interrogatory seeking the identification of all persons with knowledge of certain subjects, including those they will be testifying about.  Affymetrix violated its duty to supplement its discovery responses and the witnesses should be precluded from testifying.

Motion No. 3:  To preclude Affymetrix from presenting any evidence supporting its claims that Enzo breached the implied covenant of good faith and fair dealing or Section Nine of the Distributorship Agreement in light of the fact Affymetrix has utterly failed to show any theory or evidence of damages, which is an essential element under New York law.

Motion No. 4:  To preclude the introduction of evidence or argument at trial related to Greenberg Traurig, LLP's Motion to Withdraw as Counsel to Plaintiff.  That motion is totally disconnected from the claims to be tried, and any reference at trial to the dispute between Greenberg Traurig, LLP and Enzo should be excluded as irrelevant and unfairly prejudicial.

Motion No. 5:  To preclude, under Federal Rules of Evidence 402 and 403, Affymetrix from introducing any argument or evidence of claims previously asserted by either party in this

1

action and other lawsuits or proceedings pertaining to Enzo's patents or other agreements.  Court rulings, including rulings by this Court, are also the subject of this Motion on the additional ground that they are inadmissible hearsay.

Motion No. 6:  To preclude argument or evidence of specific compensation (including stock options) paid to any Enzo officer or employee, including its Chairman and Chief Executive Officer, Elazar Rabbani, Ph.D.  Such information is irrelevant and its minimal probative value (if any) is significantly outweighed by its prejudicial effect.

## ARGUMENT

## I.      MOTION *IN LIMINE* NO. 1—REFERENCES TO "PRICE MANIPULATION"

This case arises out of a distribution agreement entered into between Enzo and Affymetrix (the "Agreement"), which permitted Affymetrix to act as a nonexclusive distributor of certain products supplied by Enzo (the "Products"), which were listed in an exhibit to the Agreement.  It is undisputed that, under the terms of the Agreement, Enzo maintained the right to sell the Products directly to end-users, and that it exercised this right throughout the term of the Agreement.

Enzo agreed to sell the Products to Affymetrix at a particular price:  "PRODUCTS covered by this AGREEMENT are listed in EXHIBIT B. The price to AFFYMETRIX will be 0.60 times ENZO's retail price."  *See* Grassotti Decl. Ex. 1 at § 5.  Affymetrix contends that the term "ENZO's retail price" means the actual price for the Products that Enzo charged to its end-user customers, inclusive of any discounts, and not the prices stated in Enzo's catalogs or price lists, which did not reflect discounts.  In other words, Affymetrix has raised a standard breach of contract claim that hinges on interpretation of the language of the Agreement and alleges that, under the terms of the Agreement, Enzo overcharged Affymetrix for the Products by charging it

2

a payment based on an incorrect number.  At trial, the jury will be called upon to determine the meaning of the provision and whether Enzo breached it.

From the start of this case, however, Affymetrix has misleadingly referred to its breach of contract claim regarding Enzo's pricing of the Products as price "manipulation."  *See, e.g.*, Dkt. No. 1 at 28 ("ENZO WRONGFULLY MANIPULATED THE PRICE OF THE "PRODUCTS"). Its damages expert, Douglas Kidder, primarily addresses the so-called "price manipulation" claim in his report.   Affymetrix regurgitated this misnomer only two months ago in an interrogatory response:   "By calculating the transfer price to Affymetrix based-off Enzo's 'list' price instead of based-off Enzo's actual 'retail price,' Enzo committed price manipulation in breach of Section 5 of the Distributorship Agreement."  Grassotti Decl. Ex. 2 at Resp. No. 3, at p. 8.  Such loaded references to Enzo's alleged price "manipulation" are irrelevant, pejorative and unfairly prejudicial, and should not be allowed at trial.

### A.    References to "Price Manipulation" Should be Precluded as Irrelevant

The Federal Rules of Evidence specify that "[e]vidence is relevant if . . . (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  In this case, the jury will be tasked with determining whether Enzo complied with the provision of the Agreement that relates to the price it charged to Affymetrix for the Products.  The only issue in dispute on the so-called "price manipulation" claim is whether "[b]y calculating the transfer price to Affymetrix based-off Enzo's 'list' price instead of based-off Enzo's actual 'retail price,'" Enzo breached "Section 5 of the Distributorship Agreement."  Grassotti Decl. Ex. 2 at Resp. No. 3, at p. 8.  For prejudicial effect, Affymetrix refers to that practice as "price manipulation."   But setting aside for the moment the unfairly

prejudicial nature of that term (discussed below), it should be precluded from trial because it is simply an irrelevant and inapt characterization of Affymetrix's contract claim.

Price manipulation is most often associated with securities fraud and antitrust claims. Black's Law Dictionary defines "manipulation" as "[t]he illegal practice of raising or lowering a security's price by creating the appearance of active trading.  Manipulation is prohibited by section 10(b) of the Securities Exchange Act of 1934. 15 USCA § 78j(b). – Also termed market manipulation; stock manipulation."   In that same context, the Second Circuit stated, when discussing a claim pursuant to Section 10(b) of the Exchange Act:

> The Supreme Court has observed that the word "manipulative" is "virtually a term of art when used in connection with securities markets."   "The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity," and "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities."

*Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 129-30 (2d Cir. 2011).

In addition, price "manipulation" is often used to describe a particular class of claims, including antitrust claims, relating to actions taken to illegally adjust the market price of a particular commodity.  *See, e.g.*, *Laydon v. Mizuho Bank, Ltd.*, No. 12–cv–3419 (GBD), 2014 WL 1280464, *4 (S.D.N.Y. Mar. 28, 2014) (setting forth the elements to establish a claim for a "price manipulation in violation of the [Commodities Exchange Act]"); *In re Crude Oil Commodity Futures Litig.*, 913 F. Supp. 2d 41, 58 (S.D.N.Y. 2012) (denying motion to dismiss complaint alleging scheme to manipulate prices of crude oil derivatives in violation of the Sherman Act and Commodities Exchange Act).  The concept of price manipulation thus is sharply distinct from Affymetrix's breach of contract claim.  Affymetrix's bone of contention is not that Enzo improperly adjusted the catalog price from which it based Affymetrix's payments, but that Enzo should have never based Affymetrix's payments on the catalog price to begin with.

4

*See* Dkt. No. 1 at ¶ 76 ("Enzo has thus breached Section 5 of the Distributorship Agreement by failing to calculate its price to Affymetrix based on the actual retail price of Enzo's labeling reagents.").  Affymetrix's use of the term "price manipulation" therefore has no bearing on its contract claims, the meaning of the specific terms of the Agreement, or whether the parties fulfilled their obligations under the Agreement.  As Affymetrix lacks any legitimate reason for referring to "price manipulation" at trial, the Court should preclude such references as irrelevant.

### B.     References to "Price Manipulation" Should be Precluded Under Rule 403 as Unfairly Prejudicial

Even if deemed relevant, any reference to "price manipulation" should be excluded because "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Unfair prejudice is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Djangmah v. Falcione*, No. 08 Civ. 4027(KPF), 2013 WL 6388364, *10 (excluding evidence of defendant's prior bad act as unfairly prejudicial); *see also* Joseph M. McLaughlin, ed., *Weinstein's Fed. Evid.* § 403.04[1][b] (2d ed. 2000) ("Prejudice is also unfair if it is designed to elicit a response from the jurors that is not justified by the evidence.").

References to "price manipulation" should be excluded under Rule 403 because the phrase is highly inflammatory, unfairly prejudicial, and confusing to the jury.  The introduction of this evidence or argument would suggest that Enzo engaged in some type of fraudulent conduct against the market or public at large, as opposed to simply an alleged misinterpretation of its Agreement with Affymetrix.  Such a characterization would likely appeal to jurors' emotions and biases and implicitly invite them to reach a decision in this contract action on an improper emotional basis.

Courts regularly prohibit the use of "pejorative terms when such categorizations were inflammatory and unnecessary to prove a claim." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04 Civ. 10014 PKL, 2009 WL 3111766, *7 (S.D.N.Y. Sept. 28, 2009) (precluding as unfairly prejudicial the use of the term "tax haven" and other "statements linking the Bondholders, or hedge funds in general, to the financial crisis"); *see also Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 193 (S.D.N.Y. 2008) (precluding use of the term "market manipulation," as well as the adjective "inside" due to the "notoriety of insider trading" and since "any probative value of the term is outweighed by its misleading nature"). The same should apply here, and the Court should preclude Affymetrix from making any references to the inapt and loaded term of "price manipulation."

## II.    MOTION *IN LIMINE* NO. 2—UNDISCLOSED WITNESSES

Affymetrix identified three persons – Paul Kaplan, Elizabeth Kerr, and Chris O'Neill (the "New Witnesses") – for the first time in its preliminary portion of the joint pre-trial order. Each of these persons was an employee of Affymetrix and all are now alleged to have played a key role in connection with the underlying disputes. Incredibly, Affymetrix never previously identified them in discovery and never supplemented its interrogatory response that was incomplete from the start for not identifying them. They should be excluded.

Two-plus years into this litigation, on March 30, 2005, Affymetrix responded to Enzo's interrogatory asking it to "[i]dentify each persons (witnesses) with knowledge or information relevant to" twenty-two separate topics covering virtually all facets of the Enzo-Affymetrix relationship. Grassotti Decl. Ex. 3 at Interrog. No. 1. In its response, Affymetrix named a total of six people with knowledge of various of the twenty-two different topics, but none of the New Witnesses were identified. *See id.*

6

Notwithstanding Affymetrix's duty to supplement its response, Enzo received no further information on the matter for over nine years.  On April 8, 2014, approximately one month before the start of trial, Affymetrix included on its trial witness list several never-before-identified witnesses.  Such belated disclosure, on the eve of trial, no less, flies in the face of the purpose of the discovery rules—to give all parties adequate notice and time to prepare for trial and the prevention of pre-trial surprises.  Discovery is supposed to prevent trial by ambush resulting from what can only be described as purposeful non-disclosure. *See Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) ("The purpose of these rules is to avoid 'surprise' or 'trial by ambush.'").  Consistent with these principles, Affymetrix should be precluded from using these witnesses at trial under Rule 37(c).

Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Rule 26(e) requires a party to "supplement or correct" its interrogatory response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).

Affymetrix violated this requirement when it neglected – for over nine years – to update its interrogatory response regarding people with knowledge of various aspects of this litigation.  Affymetrix informed Enzo of the New Witnesses and what knowledge they have only on April 16, 2014, and only after first refusing to provide such information.  Grassotti Decl. Ex. 4.  The e-mail from Affymetrix's counsel makes it clear that the New Witnesses – Dr. Kaplan, Dr. Kerr,

and Mr. O'Neill – should have been identified in response to Enzo's interrogatory from the start,

given that Dr. Kaplan and Dr. Kerr were already former employees by then, and Mr. O'Neill left

the following year.  Affymetrix's counsel states the New Witnesses were senior executives or

employees at Affymetrix and have knowledge of, among other things:

- "Affymetrix's product and assay development activities and general business;"
- "negotiation of the Distributorship Agreement and post-signing activities in readying and launching the Products (as defined in the Distributorship Agreement);"
- "negotiation with Enzo of the package inserts and label license for the Products, as well as various issues regarding Affymetrix's relationship with Enzo, including but not limited to pricing issues and issues regarding the Products and supply of Products;"
- "the 900182 Product, the market opportunities for Affymetrix's RLR-based IVT kit, and readying the latter kit for potential launch;" and
- "Affymetrix purchasing, inventory, and shipping of Products, as well as [Affymetrix's] interactions with Enzo's materials department."

Grassotti Decl. Ex. 4.

These areas of knowledge are directly responsive to various subparts of Enzo's

Interrogatory No. 1.  Enzo asked for the identification of persons with knowledge of topics that

have heavy overlap with the information provided about the New Witnesses, such as "(a) [t]he

Enzo-Affymetrix Distributorship Agreement; (b) [n]egotiation and execution of the

Distributorship Agreement; (c) [p]roducts covered by the Distributorship Agreement; … (m)

[t]he identification of all customers, potential customers, purchasers, distributors, end-users or

recipients of products, processes and systems manufactured, marketed, used, sold or otherwise

supplied by Affymetrix; [and] (n) [s]ales, promotion or advertisement of products, processes and

systems manufactured, marketed, used, sold or otherwise supplied by Affymetrix," among other

topics.  Grassotti Decl. Ex. 3 at Interrog. No. 1.

Affymetrix concedes the New Witnesses have direct knowledge of these specific topics

8

when it states Dr. Kaplan "participat[ed] in negotiation of the Distributorship Agreement and post-signing activities" and is expected to testify about those topics, which correspond to Interrogatory No. 1 sub-parts (a) and (b).  Dr. Kerr "is expected to testify about," among other things, "issues regarding the Products and supply of Products," which was the subject of sub-part (c).  Mr. O'Neill "is expected to testify about managing Affymetrix purchasing inventory, and shipping of Products," which overlap with sub-parts (m) and (n).  *See* Grassotti Decl. Ex. 4. Affymetrix gave incomplete answers to Interrogatory No. 1 instead of identifying the New Witnesses in those responses, where they clearly belonged.

Affymetrix's failure to update its interrogatory responses in view of its clear duty to supplement is unjustifiable.  There is simply no excuse for Affymetrix's behavior in keeping these witnesses secret until less than one month before trial.  Affymetrix could not have learned anything new about these former employees in the intervening eight years since the last of the three left that was not known prior to their departure from Affymetrix.

As a result of Affymetrix's less than forthright disclosure of witnesses, Affymetrix should be precluded from presenting these witnesses at trial.  When considering whether to exclude witnesses under Rule 37(c), courts examine four factors: "(1) the party's explanation for failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

The first factor weighs against Affymetrix as it has given no reason whatsoever for its failure to disclose.  *See Serin v. N. Leasing Sys., Inc.*, No. 7:06-CV-1625, 2010 WL 6501661, *2 (S.D.N.Y. Oct. 26, 2010) (weighing the first factor against a party who fails to provide any

persuasive explanation of its discovery lapse.)  Nor is there any good reason for the failure to disclose.  "[T]his factor weighs very strongly in favor of preclusion."  *Morritt v. Stryker Corp.*, No. 07-CV-2319, 2011 WL 3876960, *6 (E.D.N.Y. Sept. 1, 2011).

With respect to the second factor, the importance of the witnesses' testimony, Affymetrix's hiding of the ball obscures this issue.  Even if the New Witnesses' testimony is highly important to Affymetrix, "the great importance of this testimony only serves to underscore the inexcusable quality of its delayed submission."  *Id.* at *7 (internal quotations omitted).

Third, the prejudice suffered by the opposing party is high in this instance.  Two of the newly named witnesses – Dr. Kaplan and Dr. Kerr – are to testify about direct negotiations with Enzo, the very essence of what the breach of contract claims at issue in this litigation are predicated upon.  *See* Grassotti Decl. Ex. 4.  The third, Mr. O'Neill, is expected to testify about Affymetrix's purchasing and inventory, topics essential to one of Enzo's breach of contract claims in this litigation. Damages discovery ended sixty-nine days ago (and merits discovery had ended months earlier).  There is no fair opportunity for Enzo to anticipate what the New Witnesses might say at trial and to adequately prepare for their cross-examination.  The documents produced by Affymetrix mentioning these witnesses show they were merely passive recipients of emails or attendees of meetings.  There is nothing in the documents or deposition testimony that would have tipped Enzo off that these individuals would be three of Affymetrix's nine trial witnesses and needed to be deposed, and certainly nothing close to the type of indication that would have been given if Affymetrix had complied with its duty to supplement. Discovery would have to be reopened and further depositions would have to be taken to remedy this significant prejudice to Enzo.  *See Pal v. New York Univ.*, 06CIV.5892PACFM, 2008 WL

10

2627614, *5 (S.D.N.Y. June 30, 2008) (stating third factor weighs in favor of sanctions where discovery is closed and would have to be reopened in order to allow deposition of newly identified witnesses.)

The fourth factor, the possibility of a continuance, further tips the scales in favor of Enzo. Trial is scheduled for May 12, 2014. A continuance at this time to accommodate Affymetrix's behavior would only encourage and condone this exact sort of nine-year-long sandbagging on the eve of trial. Nor has Affymetrix requested a continuance to remedy its behavior. *See Patterson*, 440 F.3d at 118 (finding where party in violation of discovery rules does not request a continuance, this factor does not weigh in that party's favor.)

Affymetrix has no excuse for failing to disclose these witnesses for more than nine years. The relative importance of these witnesses does nothing to prevent their preclusion in this instance. Enzo would be greatly prejudiced by allowing these witnesses to testify at trial by virtue of the complete circumvention of the discovery process. The three newly disclosed witnesses, Paul Kaplan, Elizabeth Kerr, and Chris O'Neill, should all be precluded from testifying at trial.

## III.    MOTION *IN LIMINE* NO. 3—STRIKING DAMAGES THEORY/CLAIM

In its portion of the pre-trial order, Affymetrix seeks to revive a claim that it has effectively abandoned – that Enzo supposedly breached the implied covenant by seeking to assure that Affymetrix customers did not violate Enzo's rights as set forth in Enzo's labeling. Although having pleaded such a claim, Affymetrix has never identified even a penny of damages caused by the alleged breach. As such, the claim should be deemed abandoned and dismissed.

Under New York law, damages are an essential element of a breach of contract claim. *Fischer & Mandell, LLP v. Citibank, N.A.,* 632 F.3d 793, 799 (2d Cir. 2011). "[F]ailure to prove

11

damages is … fatal to a plaintiff's breach of contract cause of action." *LNC Investments, Inc. v. First Fidelity Bank, N.A. New Jersey*, 173 F.3d 454, 465 (2d Cir. 1999).   Affymetrix has repeatedly failed to state, produce, or report any evidence supporting any damages whatsoever resulting from the alleged breaches of the implied covenant of good faith and fair dealing and Section Nine.   During damages discovery, Enzo explicitly asked Affymetrix "[f]or each instance of alleged breach of contract by Enzo for which You seek damages, identify," among other things, the "(b) theory of damages [and] (c) amount of damages …."   *See* Grassotti Decl. Ex. 2 at Interrog. No. 3.   In its response to category "(b)," Affymetrix described in detail its theory of damages for three of its four breach of contract claims.   *See id.* at Resp. No. 3.   For the alleged breaches of the implied covenant of good faith and fair dealing and Section Nine, however, Affymetrix merely acknowledged general theories of damages without offering any means of quantifying them.    *See id.*   Similarly, Affymetrix's response to category "(c)" only states that Affymetrix will provide a calculation of damages for all of its claims in its expert report.   *See id.*

That was a reference to the later-submitted Expert Report of Douglas Kidder, dated March 24, 2014 (the "Kidder Report").   However, like its response to the damages interrogatory, the Kidder Report makes no mention of damages stemming from the alleged breach of the implied covenant of good faith and fair dealing and Section Nine of the Agreement, despite the fact Affymetrix's other three breach of contract calculations are examined in detail.[1]   Nor has Mr. Kidder offered a supplemental opinion on any such claim.

Affymetrix has, through its intentional omission of any damages theory or amount stemming from the alleged breaches of the implied covenant of good faith and fair dealing and Section Nine, failed to state adequate breach of contract claims under New York law.   *See*

---

[1] Mr. Kidder offers an opinion only on Affymetrix's retail price claim, attempts to change the applicable label claim, and non-conforming good claim.

*Kobrand Corp. v. Abadia Retuerta S.A.*, No. 12 Civ. 154, 2012 WL 5851139, *9 (S.D.N.Y. Nov. 19, 2012) (dismissing breach of contract claims where a party has shown no facts that would permit a jury to find it had suffered damages as a result of the breach).[2]  Accordingly, Affymetrix cannot prove an essential element of its claim and it should be dismissed on that basis alone.

Its failure also violated the disclosure obligations of Rules 26(a)(2)(B), 26(e)(1), and 26(e)(2) by failing to present any facts, data or opinions pertaining to damages and, further, by failing to supplement the Kidder Report and Affymetrix's interrogatory responses.  Affymetrix should therefore be precluded from presenting any testimony or evidence relating to those claims at trial pursuant to Rule 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless.")

Rule 37 affords the Court wide discretion to impose even severe sanctions on a party found in noncompliance with its discovery obligations.  *See Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013) (stating where a party fails to provide Rule 26(a) or (e) information, the offending party generally cannot use that information at trial without showing the failure was "substantially justified" or harmless); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006) (preclusion of evidence requires consideration of "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance" and noting that a finding of bad faith is not required to order preclusion).

---

[2] As the Court is aware, summary judgment briefing in this and the related actions took place prior to damages discovery.

13

Each of the factors set forth in *Design Strategy* is met here.  First, Affymetrix has not provided any damages calculations or amounts whatsoever, and there is no excuse for failing altogether to provide the required information.  Second, while evidence of Affymetrix's damages may be very important, "the great importance of this testimony only serves to underscore the inexcusable quality of its delayed submission."  *Morritt*, 2011 WL 3876960 at *7 (internal quotations omitted).

Third, the potential prejudice to Enzo at this late stage is enormous, as Affymetrix has not even hinted at how it will demonstrate damages, leaving Enzo unsure as to what it will have to rebut.  *See, e.g., Rienzi & Sons Inc. v. N. Puglisi & F. Industria Paste,* No. 08-CV-2540 (DLI)(JMA), 2011 WL 1239867, *4-5 (E.D.N.Y. March 30, 2011) (precluding defendant from supplementing its damages where prejudice to plaintiff was "particularly great because discovery is closed and have to be reopened for [plaintiff] to appropriately respond to the damages calculations"); *Harkabi v. SanDisk Corp.*, No. 08 Civ. 8203 (WHP), 2012 WL 826892, *8 (S.D.N.Y. March 12, 2012) (observing that "[a]n amendment several weeks before trial would prejudice [defendant] unfairly).  These factors outweigh the importance of the damages evidence. *Agence*, 293 F.R.D. at 687*; see also Rienzi*, 2011 WL 1239867 at *5.  Affymetrix's implied covenant claim should be dismissed, or, alternatively, it should be precluded from offering any evidence of this claim at trial.

Should, however, the Court allow presentation of the above claims at trial, for the same reasons set forth above, Affymetrix should be precluded from presenting evidence that supports any claim of damages including nominal damages.  Its failure to set forth a detailed damages theory, the amount it has been damaged, and to offer any analysis in its damages expert report precludes the surprise offering of a robust, undisclosed damages theory and amount at trial.

## IV.   MOTION *IN LIMINE* NO. 4—GT'S WITHDRAWAL MOTION

As this Court knows, Greenberg Traurig, LLP ("GT") moved to withdraw as counsel to Enzo on March 17, 2014 (the "Motion").  *See* Dkt. No. 130.  Enzo anticipates that Affymetrix intends to introduce evidence or argument regarding GT's Motion at trial.  Specifically, Affymetrix has listed as trial exhibits the Declarations of Jeffrey Mann and Michael Burrows filed in support of GT's Motion on April 11, 2014 (the "Declarations," Dkt. Nos. 159 and 160, respectively).  When Enzo's counsel asked opposing counsel to identify the basis on which Affymetrix intended to introduce these exhibits, opposing counsel demurred and would not articulate any.  There is none.  Accordingly, argument or evidence regarding GT's Motion should be precluded at trial as plainly irrelevant and unfairly prejudicial, and the Declarations should be precluded as inadmissible hearsay.

Evidence or argument regarding GT's Motion plainly has no bearing on any of the contract claims to be tried.  Consideration of GT's Motion and statements made in connection with the Motion – such as in the redacted Declarations – would not tend to make any material fact at issue on the pending breach of contract claims more or less probable than it would be without the evidence.  *See* Fed. R. Evid. 401.  Accordingly, this evidence should be precluded as irrelevant.

Moreover, introduction of this evidence would risk many of the dangers Rule 403 aims to avoid, as it would invite juror speculation, risk juror confusion about the issues to be tried, and would risk delaying resolution of pertinent issues.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").  Given the prominent role before the jury that trial

counsel plays, any reference to the Motion or argument regarding GT's position would pose the significant risk that the issue be inaccurately magnified by the jury when it actually has no probative value in the case before it.  *See e.g.*, *United States v. Morel*, 751 F. Supp. 2d 423, 431 (E.D.N.Y. 2010) (precluding defense from referencing government's initial declination of prosecution, where introduction created a substantial risk of confusing and misleading the jury); *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) (excluding references to nonparty allegations where introduction posed risk of turning trial into a "multi-ringed sideshow of mini-trials on collateral issues") (citation omitted).

Such evidence or argument would unnecessarily threaten to invade the protected attorney-client relationship by probing into sensitive statements made for the limited purpose of a withdrawal motion, and would not – on balance – serve any proper purpose at trial. Counsel and its relationship with its client should play no role in the trial of the parties' breach of contract claims.  As a court in the Eastern District of New York recently held in a similar situation,

> evidence relating to the efforts of the defense attorneys in those actions to withdraw as counsel for Shames would be confusing and prejudicial, in light of the fact that the motives of the various parties and attorneys as that litigation unfolded would be difficult to ascertain, result in a trial within a trial, and inevitably become the subject of wild speculation. Evidence relating to the attorney-client relationship between Shames and any of the defense attorneys in any of the state court lawsuits may not be introduced, as any probative value that such evidence may have is substantially outweighed by the danger of unfair prejudice were it to be presented to the jury.

*Chapple v. Fahnestock & Co., Inc.*, No. 03-4989 (TLM), 2010 WL 3118638, *1 (E.D.N.Y. Aug. 5, 2010).

Finally, in no event should the Declarations (in any form) be admitted into evidence, as they plainly constitute hearsay for which no exception applies.  *See* Fed. R. Evid. 801-804.

Enzo thus requests that the Court make clear in advance that neither said Declarations nor

any other evidence or mention of the dispute between GT and Enzo be offered or uttered at trial.

## V.     MOTION *IN LIMINE* NO. 5—FORMER CLAIMS AND OTHER PROCEEDINGS

In April 1998, Enzo and Affymetrix entered into the Distributorship Agreement at issue. Two cases arising out of the Distributorship Agreement have been consolidated for purposes of trial.  Enzo's complaint against Affymetrix asserted claims for breach of contract, injunction and declaratory judgment as to Enzo's intellectual property rights.  Affymetrix's complaint against Enzo asserted claims for breach of contract, tortious interference, and unfair competition, as well as declaratory judgment of patent invalidity and non-infringement of Enzo's intellectual property.  The scope of these actions has since been narrowed.  The Court has dismissed some of these claims on summary judgment and the parties have withdrawn others.  *See* 04-CV-01555 (RJS), Dkt. Nos. 109 and 280.  As a result, the only issues remaining for trial are the parties' respective breach of contract claims.  Nevertheless, based on Affymetrix's pre-trial exchanges, Enzo anticipates that Affymetrix intends to introduce evidence or argument related to prior claims between the parties, and other lawsuits relating to Enzo's intellectual property and distributorship agreements with third parties.  For instance, Affymetrix has proposed a jury instruction that would have the Court instruct the jury as to the Court's summary judgment rulings on the Agreement's "Grant-Back Provision."  For the reasons set forth below, any such evidence should be precluded because it is irrelevant, unfairly prejudicial, and inadmissible hearsay.

Enzo, though, recognizes that discovery in this matter was consolidated with discovery in several other lawsuits,[3] and that documents or testimony provided in those actions may be

---

[3] The other lawsuits consolidated for discovery were (1) *Enzo Biochem, Inc. et al. v. Amersham PLC, et al.*, 02-CV-8448 (RJS); (2) *Enzo Biochem, Inc. et al. v. Molecular Probes, Inc.*, 03-CV-3816 (RJS); (3) *Enzo Biochem, Inc. et al. v. Orchid Biosciences, Inc.*, 03-CV-3819 (RJS); (4)

properly admitted into evidence at trial because to the extent they are relevant to the instant breach of contract claims or for other purposes.  Therefore, Enzo seeks to exclude only reference to the existence of and allegations in the other lawsuits in which such documents or testimony was provided.  Accordingly, to reduce juror confusion and bias, Enzo respectfully requests that when such evidence is proffered at trial, reference to its source or other litigation should be precluded, and it should be regarded as if it had been provided in this action.

### A.    Argument or Evidence Regarding Claims No Longer in These Actions Should be Precluded Under Rules 402 and 403

### 1.    Argument or Evidence of Other Claims is Irrelevant

As defined by the Federal Rules of Evidence, "[e]vidence is relevant if . . . (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  If an item of evidence "does not tend to prove a material fact, it is irrelevant. . . . A material fact is one that would affect the outcome of the suit under the governing law."  *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (internal quotations and citations omitted).  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

Argument or evidence regarding claims that are no longer part of a case and have no bearing on any element of an extant claim is irrelevant and should be precluded under Rule 402.  *See Hamza v. Saks Fifth Ave, Inc.*, No. 07 Civ. 5974(FPS), 2011 WL 6187078, *6-8 (S.D.N.Y. Dec. 5, 2011) (excluding evidence of previously dismissed claim as irrelevant); *Chrisholm v.*

---

*Enzo Biochem, Inc. et al. v. PerkinElmer, Inc. et al.*, 03-CV-3817; (4) *Roche Diagnostics GMBH et al. v. Enzo Biochem, Inc. et al.*, 04-CV-4046 (RJS); and (5) *Enzo Biochem, Inc. et al. v. Sigma-Aldrich Corp., et al.*, 03-CV-03820.  *See* Grassotti Decl. Ex. 5.  This motion also seeks to exclude reference to other lawsuits or proceedings, including but not limited to (1) *Enzo Biochem, Inc. et al. v. Applera Corp. et al.*, 04-CV-00929 (JBA); (2) *Pasteur v. Enzo Biochem, Inc. et al.*, 91-CV-02955 (LJF); (3) any litigation involving Dr. David C. Ward; and (4) any proceedings before the United States Patent and Trademark Office.

*Sloan-Kettering*, No. 09 Civ. 8211(VM), 2011 WL 2015526, *5 (S.D.N.Y. May 13, 2011) (precluding evidence of withdrawn claim not encompassed by sole remaining claim).   Prior claims once asserted by Enzo and Affymetrix alike are irrelevant because none of the remaining contract issues involves or is dependent upon them.   Evidence of prior claims in these actions will not assist the jury by making any relevant fact "more or less probable."   Fed. R. Evid. 402. Accordingly, such evidence is irrelevant and should be excluded under Rule 402.

### 2.   Argument or Evidence of Other Claims Is Unfairly Prejudicial Under Rule 403

To the extent evidence concerning claims no longer at issue is deemed relevant to the contract claims remaining to be tried, such evidence should still be precluded under Rule 403 as its probative value, if any, would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   "Unfair prejudice" means "an undue tendency to suggest decision on improper basis."   Fed. R. Evid. 403, Advisory Committee's Notes (2011).

Any marginal probative value, if any, of evidence of prior claims in this action is substantially outweighed by unfair prejudice to Enzo, the likelihood that the presentation of the evidence would mislead and confuse the jury on the relevant issues, and the needless wasting of time needed to respond on dismissed or withdrawn claims.   For these reasons, courts routinely preclude such argument or evidence.   *See*, *e.g.*, *Dollman v. Mast Indus.*, No. 08 Civ. 10184 (WHP), 2011 WL 3911035, *5 (S.D.N.Y. Sept. 6, 2011) (excluding evidence that plaintiff's additional claims were dismissed as not probative and prejudicial); *Park West Radiology v. CareCor Nat'l LLC*, 675 F. Supp. 2d 314, 324 (S.D.N.Y. 2009) (excluding references to preliminary injunction ruling and other prior disputes on similar grounds).

Evidence concerning the fact that either party had asserted additional claims and the allegations supporting those claims would be unfairly prejudicial to the extreme, as it would run the risk that the jury may defer to the earlier results rather than decide the current claims on the evidence before it. *See Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, 756 F. Supp. 2d 598, 604-05 (D. Del. 2010), *aff'd in part and rev'd in part on other grounds, Roche Diagnostics Operations, Inc. v. Lifescan Inc.*, 452 Fed. Appx. 989, 998 (Fed. Cir. 2012) (upholding exclusion of patent infringement rulings as irrelevant and prejudicial to non-patent claims); *Cook v. Hatch Assocs.*, No. 02 Civ. 0065A, 2007 WL 1267023, *2 (W.D.N.Y. April 30, 2007) (excluding EEOC determination letters because jury might be misled to think all of plaintiff's claims were meritless simply because some claims were dismissed). For the foregoing reasons, references to claims that are no longer in this case should be excluded under Rule 403, if not under Rule 402.

**B.     Argument or Evidence Regarding Other
         Lawsuits Should be Precluded Under Rules 402 and 403**

Argument and evidence relating to other lawsuits not involving Affymetrix, particularly the pleadings and rulings therein, should also be precluded under Rules 402 and 403. Such evidence cannot affect the outcome of these contract actions and is irrelevant. None of the other lawsuits involved the Agreement at issue, and therefore neither their existence nor their allegations would be probative of any relevant issue in deciding whether Enzo or Affymetrix breached the Agreement. Accordingly, argument or evidence relating to other lawsuits should be precluded as irrelevant. *See Arlio*, 474 F.3d at 52-53 (evidence of prior arbitration between the parties should have been excluded as irrelevant).

Even if evidence relating to other lawsuits is deemed relevant to the instant dispute, such evidence should still be precluded under Rule 403 as unfairly prejudicial. "Indeed, courts

20

generally exclude evidence of other lawsuits." *Bd. of Trs. of AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251, 254 (S.D.N.Y. 2012) (excluding evidence of similar lawsuits); *accord Arlio*, 474 F.3d at 53 ("courts are reluctant to cloud the issues in the case at trial by admitting evidence relating to previous litigation involving one or both of the same parties") (internal citation omitted).  Rule 403 is "properly utilized to prevent the jury from reaching its decision based on a prior finding—in essence, ratifying the earlier decision—instead of basing its verdict on the evidence presented in the instant case." *Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ. 9006(LAP), 2003 WL 1907904, *1 (S.D.N.Y. April 16, 2003) (excluding evidence of facts and results of related Egyptian proceeding to avoid unwarranted "sideshow").  Any marginal relevance of the other lawsuits is substantially outweighed by the risks of unfair prejudice, misleading the jury, confusion of the issues, and delay.  *See, e.g., Park West Radiology*, 675 F. Supp. 2d at 330; *Figueroa v. Boston Scientific Corp.*, No. 00 Civ. 2922(DC), 2003 WL 21488012, *4 (S.D.N.Y. June 27, 2003) (excluding evidence other lawsuits).

      **C.**    **Evidence of Court Rulings in Other Lawsuits**
                **Should Also be Precluded as Inadmissible Hearsay**

Moreover, even if the other lawsuits or proceedings are deemed relevant, any references to the rulings therein should be excluded as inadmissible hearsay.  *See* Fed. R. Evid. 802. "Judicial findings in other cases proffered as evidence are generally characterized as inadmissable [sic] hearsay.  No specific exceptions apply under the Federal Rules of Evidence." *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) (Weinstein, J.) (excluding judicial findings of fact as hearsay and unfairly prejudicial) (internal citations omitted).  Accordingly, such evidence should be excluded at trial for the further reason that it is inadmissible hearsay for which no exception applies.  *See, e.g.,*

*Park West Radiology*, 675 F. Supp. at 330 (excluding pleadings in other lawsuits as hearsay and prejudicial); *Gaffney v. Dep't of Info. Tech. and Telecomms.*, 579 F. Supp. 2d 455, 459 (S.D.N.Y. 2009) (excluding evidence of court decision on summary judgment motion as hearsay, irrelevant, and potentially confusing to the jury).

## VI.   MOTION *IN LIMINE* NO. 6—SPECIFIC COMPENSATION

Evidence or argument regarding Enzo officers' or employees' specific compensation should be excluded from trial as irrelevant and unfairly prejudicial.  Such evidence is plainly irrelevant, as it does not have any tendency to make any material fact at issue in this case more or less probable than it would be without the evidence.  *See* Fed. R. Evid. 401.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  Affymetrix has proposed an "Interest in Outcome" jury instruction, which suggests that Affymetrix will seek to show that certain Enzo witnesses, such as its lead witness, Dr. Rabbani, are biased.  To the extent Affymetrix seeks to develop any theory that an Enzo witness may be biased for having some general, speculative financial interest in the outcome of the instant litigation, Affymetrix should be precluded from introducing evidence or argument about any such witness's specific compensation.

For example, as Chairman and Chief Executive Officer, Dr. Rabbani is bound to work for the profitability of his company.  Accordingly, as is the case for virtually every senior business executive, Enzo's performance could generally affect Dr. Rabbani's compensation.  Evidence about the specifics of Dr. Rabbani's compensation (whether current, potential, or speculative based on various results at trial), however, is irrelevant and should be precluded under Rule 402. *See*, *e.g.*, *Aristocrat Leisure*, 2009 WL 3111766 at *6 ("While the method of compensation is probative of a theory that hedging decisions were based on compensation and not mitigation, the Court has serious doubts about the relevance of the actual dollar figure of the Bondholders'

compensation.").

Even if an Enzo employee's specific compensation is deemed relevant, such evidence should still be excluded under Rule 403, as any marginal probative value it might have would be substantially outweighed by the danger that it would lead to "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Specific information about the wealth of an Enzo officer would unduly invite a verdict based on an emotional reaction to that wealth.  "[A]ny limited probative value of [the actual dollar amount of a relevant party's compensation] is outweighed by its potential to bias the jury under Rule 403." *Aristocrat Leisure*, 2009 WL 3111766 at *6; *see also Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) (excluding evidence about "compensation package" because "parties are not permitted to argue to the fact finder's potential economic sympathies or prejudices"); *L–3 Commc'ns Corp. v. OSI Sys., Inc.,* No. 02 Civ. 9144(PAC), 2006 WL 988143, *6 (S.D.N.Y. Apr. 13, 2006) (granting *in limine* motion excluding evidence of witness's wealth because it was "clearly irrelevant," "and its inclusion would be unfairly prejudicial").  The introduction of any specific compensation would unfairly inject a prejudicial aspect into the case that is unnecessary and inappropriate.

## CONCLUSION

Accordingly, for the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motions *in Limine* in their entirety.

Dated: April 17, 2014                **GREENBERG TRAURIG, LLP**

By: __/s/ Ronald D. Lefton_____

Ronald Lefton (LeftonR@gtlaw.com)
Karen Y. Bitar (BitarK@gtlaw.com)
Lauren B. Grassotti
(GrassottiL@gtlaw.com)

John Elliott (ElliottJ@gtlaw.com)

200 Park Avenue
New York, New York 10166
(212) 801-9200

*Attorneys for Enzo Biochem, Inc. and Enzo
Life Sciences, Inc.*